UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DAQUAN MAJOR,

     *Petitioner*,

  -against-

UNITED STATES OF AMERICA,

     *Respondent*.

----------------------------------X

NOT FOR PUBLICATION

**MEMORANDUM AND ORDER**

09-CV-1846(KAM)

**Matsumoto, United States District Judge**:

     After a jury trial and subsequent conviction on six counts, Daquan Major ("petitioner") was sentenced to 396 months imprisonment. Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate or reduce his sentence. For the reasons set forth below, his motion is denied.

## Background

### (1) The Charges

     The charges against petitioner stem from his involvement in a criminal crack cocaine selling conspiracy between November 1999 and September 2000. (Presentence Investigation Report ("PSR") ¶¶ 25-29.) Petitioner participated in a number of criminal activities as a member of the Cream Team,[1] a violent drug organization operating in Brooklyn, New York. (Id. ¶ 9.)

---

[1] The organization's moniker is a near acronym, translating to "cash rules everything around me, together everyone earns more." (PSR ¶ 9.)

The Cream Team formed in approximately 1998 to monopolize crack cocaine sales in Brooklyn's Marlboro Housing Development ("Marlboro"), a residential complex consisting of several apartment towers. (Id.) The Cream Team sold an estimated two to six kilograms of crack cocaine over the duration of its drug operations. (Id. ¶ 23.) Additionally, the Cream Team maintained a small cache of firearms,[2] which it used for protection and dispute resolution. (Id. ¶ 12.)

Cream Team leader Jason Dent ("Dent") divided the organization into two non-exclusive cohorts, "All Stars" and "Doldiers."[3] (Id. ¶ 10.) "All Stars" were the organization's top earners. (Id.) "Doldiers" provided security for Cream Team operations. (Id.) Petitioner was both an "All Star" and a "Doldier." (Id.) He earned this dual-designation by selling between $100 to $1000 of crack cocaine per week and also participating in several violent crimes on the Cream Team's behalf. (Id. ¶¶ 10, 54.)

The Cream Team's primary avenue of crack cocaine sales and distribution was a small area in Marlboro known to locals as "the lane." (Id. ¶ 14.) The Cream Team often resorted to

---

[2] This collection of guns included a pump-action shotgun, .357 revolver, .45 automatic pistol, .38 automatic pistol, .38 snub-nosed revolver and .25 pistol. (Id. ¶ 12.)

[3] "Doldiers" were also known in the organization as "Enforcers." (Id. ¶ 10.)

violence to enforce its territorial control over this territory. (Id.) For instance, "Doldiers" participated in homicides, shootings, assaults and robberies as part of organizational efforts to occupy the Cream Team's domain. (Id. ¶¶ 20, 29, 31-41, 43.) The Cream Team also engaged in at least one instance of attempted witness tampering. (Id. ¶ 29.)

On March 25, 2000, petitioner and Dent observed Ramel Flowers ("Flowers"), a member of a rival organization, selling drugs in Cream Team territory. (Id. ¶ 33.) The pair told Flowers he was not authorized to sell drugs in the vicinity. (Id.) In response, Flowers began to walk away from the area, but, believing that petitioner was reaching for a weapon, he turned back and engaged in a scuffle with petitioner. (Id.) Dent fired at and missed Flowers, who, in response, retreated to his father's apartment on the thirteenth floor of a nearby Marlboro building. (Id.)

Immediately following this encounter, Dent instructed petitioner to retrieve several guns for Cream Team members. (Id. ¶ 34.) Petitioner and Dent armed and assembled several "Doldiers" in order to "light up" the building where rivals Flowers and Kijuanne Thompson ("Thompson") were then located. (Id. ¶ 35.) Petitioner and Dent positioned themselves outside the building as other Cream Team members searched inside from the top floor down. (Id. ¶ 35.) Petitioner and Dent initially

3

planned to conduct a reverse search, beginning with the bottom floor of the building. (Id.) However, they changed their approach after observing that Thompson was on a floor above them. (Id.)

During the building sweep, Cream Team member Jason Jones shot and killed Flowers with a single shotgun shell. (Id.) Following the shooting, petitioner gathered the group's weapons and returned them to a fourteenth-floor "stash" location in Marlboro. (Id. ¶ 36.)

### (2) Trial, Sentence and Appeal

Petitioner was arrested on state charges on September 21, 2000. (Id. ¶ 55.) He was later transferred to federal custody on September 5, 2001. (Id.) At a government proffer session petitioner admitted to the conduct described above. (Id. ¶ 56.)

Petitioner was charged in a six-count indictment consisting of (1) conspiracy to distribute cocaine ("Count One"), in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); (2) engaging in a criminal enterprise resulting in murder ("Count Two"), in violation of 21 U.S.C. § 848(e)(1)(A); (3) conspiracy to engage in a continuing criminal enterprise resulting in murder ("Count Three"), in violation of 21 U.S.C. §§ 846 and 848(e)(1)(A); (4) unlawful discharge of a firearm ("Count Four" or "unlawful discharge count"), in violation of 18 U.S.C.

4

§ 924(c)(1)(A)(iii); (5) unlawful use of a firearm causing death ("Count Five"), in violation of 18 U.S.C. § 924(j)(1); and (6) being a felon in possession of a firearm ("Count Six"), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Id. ¶¶ 2-7.) Petitioner proceeded to a jury trial. (Id. ¶ 1.) The jury returned a guilty verdict on all six counts. (Id.)

Probation calculated a total offense level of 43 and a Criminal History Category of VI. (Id. ¶¶ 94, 109.) As a result, Probation recommended a Guidelines term of lifetime imprisonment. (Id. ¶ 163.) Additionally, Probation recommended a ten-year term of imprisonment for the unlawful discharge count to run consecutively to the sentence imposed on the other violations.[4] (Id.) Probation also noted that petitioner was subject to a mandatory minimum sentence of twenty years for Counts Two and Three (i.e., engaging in a continuing criminal enterprise resulting in murder and conspiracy to engage in a continuing criminal enterprise resulting in murder, together, the "continuing criminal enterprise counts"). (Id. ¶ 159.) Petitioner was sentenced to 276 months imprisonment on Counts One, Two, Three and Five, which included the twenty-year

---

[4] Subject to certain exceptions, the five-, seven- or ten-year sentence (respectively, for possessing, brandishing or discharging a firearm) must run consecutively to any other term of imprisonment, including the term imposed for the underlying crime of violence or drug crime. See 18 U.S.C. § 924(c)(1)(D)(ii).

5

mandatory minimum on the continuing criminal enterprise counts, to 120 months imprisonment on Count Four, the unlawful discharge count, to run consecutively to all other counts, and to 120 months imprisonment on Count Six to run concurrently with Counts One, Two, Three and Five. (ECF No. 189, 01-CR-1343, Judgment as Daquan Major at 2.)

Petitioner then appealed on several grounds to the Court of Appeals, which consolidated his appeal with those of co-defendants Dent and Desinor. United States v. Desinor, 525 F.3d 193, 195 (2d Cir. 2008). First, petitioner contended that the district court erred in failing to instruct the jury on self-defense. Id. at 197-98. Second, petitioner contended that the district court's instruction impermissibly minimized the requirement of a meaningful relationship between the Flowers murder and narcotics conspiracy. Id. at 201. Third, petitioner contended that the evidence was insufficient to prove the "engaging in" element of § 848(e)(1)(A)[5] beyond a reasonable doubt. Id. at 202-03. Fourth, petitioner contended that he was prejudiced by the admission of testimony from an expert narcotics witness. Brief for Defendant-Appellant Daquan Major, Desinor,

---

[5] Section 848(e)(1)(A) penalizes "any person engaging in or working in furtherance of . . . [a drug] offense punishable under section 841(b)(1)(A) . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual." 21 U.S.C. § 848(e)(1)(A)(emphasis added).

6

525 F.3d 193 (No. 05-4500) ("Appellate Brief") at 22.

In a published opinion, the Second Circuit affirmed petitioner's conviction and sentence. Desinor, 525 F.3d at 204-05. In the same opinion, however, the court vacated a portion of Desinor's sentence. Id. Specifically, the court held that the district court abused its discretion in sentencing Desinor for his unlawful discharge conviction pursuant to § 924(c)(1)(A)(iii). Id. at 203-04. The court found that the jury's verdict on this count did not determine that Desinor "discharged" a weapon, nor did the district court make an independent finding to that effect. Id. at 204. Although petitioner joined the arguments of his co-appellants, and was convicted of the same charge, he did not receive the benefit of this argument. Appellate Brief at 27; see Desinor, 525 F.3d at 204. On October 6, 2008, the Supreme Court denied Major's petition for writ of certiorari. Major v. United States, 129 S. Ct. 298 (2008).

### (3) Habeas Petition

Petitioner, through counsel, filed the instant motion pursuant to 28 U.S.C. § 2255 on May 4, 2009, seeking to have the Court resentence him to a concurrent sentence on the unlawful discharge count. (ECF No. 1, Motion Pursuant to Title 18 U.S.C. Sec. 2255 for Resentence ("Petr.'s Br.") at 1.) Petitioner contends that at his sentencing on April 26, 2006, all parties

7

operated under the belief that the 120-month sentence on the unlawful discharge count was required to run consecutively to his other sentences. (Id.) Petitioner contends, however, that a Second Circuit decision, United States v. Whitley, which was decided after his appeal had concluded, held that such a sentence may be served concurrently. 529 F.3d 150 (2d Cir. 2008) (holding that a mandatory minimum sentence imposed for a § 924(c) gun violation may be imposed concurrently with the defendant's greater mandatory minimum sentences), abrogated by Abbott v. United States, 562 U.S. ___, 131 S. Ct. 18 (2010). Accordingly, petitioner argues that, pursuant to Whitley, he is exempt from the imposition of a consecutive sentence because he was also facing a mandatory minimum sentence of twenty years on the continuing criminal enterprise counts (the "Whitley argument"). (Petr.'s Br. at 2.) Additionally, petitioner notes that even in the event of an adjustment he will still face over twenty years' imprisonment. (Id.)

In opposition, the government contends that petitioner's resentencing claim is procedurally barred because he failed to raise it on direct appeal. (ECF No. 3, Memorandum in Opposition to Petitioner's 2255 Petition ("Gov't Resp.") at 2.) As a result, the government asserts that petitioner's motion is barred unless he can show cause for failure to raise the claim and prejudice resulting from this failure. (Id.) The government

contends that the Whitley argument was available at sentencing, and therefore, petitioner cannot show cause for failing to raise it. (Id. at 3.) Further, the government contends that the petitioner cannot show prejudice. (Id.)

In the alternative, the government argues that even if the claim is not procedurally barred, petitioner's claim is not cognizable under § 2255 because the error of law alleged did not result in a complete miscarriage of justice. (Id. at 4.) The government asserts that since the sentence fell within the Guidelines, it should remain undisturbed. (Id. at 6.)

On December 16, 2010, petitioner filed a pro se amended motion in the prison mail system. In it he raises five new claims based on ineffective assistance of trial, sentencing and appellate counsel. In particular, petitioner claims that counsel was ineffective for (1) not requesting a jury instruction requiring the jury to find unanimously which specific violations made up the continuing series of violations of 21 U.S.C. § 848; (2) not arguing at sentencing that "concurrent sentences for 21 U.S.C. § 846 and § 848 conspiracy and CCE offenses are cumulative punishment unauthorized by Congress & that there was no[] reliable evidence supporting the government's premise that Yanni's murder was drug related"; (3) not arguing at sentencing that, since petitioner was subject to the twenty-year mandatory minimum on the continuing criminal enterprise counts, the ten-

9

year mandatory minimum for the unlawful discharge count should not have been imposed consecutively; (4) not arguing for the dismissal of petitioner's case for lack of subject matter jurisdiction; and (5) for not arguing for the dismissal of Count Six on the grounds that the government did not prove the jurisdictional element of 18 U.S.C. § 922(g)(1). (ECF No. 5, Amended Motion for Resentence ("Am. Mot.") ¶ 12; ECF No. 6, Memorandum of Law of Points and Authorities in Support of Amended Motion for Resentence ("Mem. of Law") at 1-2.)

## Discussion

### (1) Merits of Petitioner's Whitley Claim

Whitley was the first Second Circuit case to construe the application of what is commonly known as the "except" clause of § 924(c)(1)(A) to non-firearm sentences. Section 924(c)(1)(A) provides:

> <u>Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law</u>, any person who, during and in relation to any crime of violence or drug trafficking crime . . . shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . [be sentenced to a term of not less than five, seven or ten years depending on the degree of the violation].

§ 924(c)(1)(A)(i)-(iii) (emphasis added). In Whitley, the defendant was sentenced under two provisions of § 924 of Title 18: subsection (e), the armed career criminal provision, which

10

imposes a mandatory minimum prison term of fifteen years, and subsection (c), which, in the defendant's case, imposed a minimum of ten years.[6] 529 F.3d at 151-53. The defendant's sentence on subsection (c) was imposed consecutively. Id. at 152. The Second Circuit departed from all the other circuits that considered the application of the "except" clause, id. at 156, and remanded for resentencing, id. at 158. The court applied the plain meaning of the "except" clause, holding that the ten-year consecutive sentence did not apply to the defendant because he was subject to a greater minimum sentence provided by a provision of law other than subsection (c), namely the fifteen-year mandatory minimum imposed by subsection (e). Id. at 156-58.

The Second Circuit holding in Whitley, however, is no longer controlling law in this Circuit. Last year, the Supreme Court decided Abbott v. United States, rejecting the Second Circuit's interpretation of the "except" clause in Whitley. The Supreme Court instead held that "a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction." Abbott,

---

[6] Section 924(c)(1)(A) provides graduated offense levels and accompanying sentences within the statute for various degrees of the firearm violation, i.e., using, carrying or possessing a firearm carries a five-year sentence, brandishing carries seven and discharging, ten. § 924(c)(1)(A)(i)-(iii).

131 S. Ct. at 23. The Court interpreted the "except" clause to mean that "a § 924(c) offender is not subject to stacked sentences for violating § 924(c)" but that "[h]e is . . . subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum." Id. Specifically, "[i]f another provision of the United States Code mandates a punishment for using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of violence, and that minimum sentence is longer than the punishment applicable under § 924(c), then the longer sentence applies." Id. at 29 (internal quotation marks omitted).

In light of this interpretation by the Supreme Court, the "except" clause does not spare petitioner the mandatory application of a consecutive ten-year sentence under § 924(c). Under Abbott, the imposition of the twenty-year mandatory minimum on the continuing criminal enterprise counts did not exempt petitioner from the ten-year sentence under § 924(c) because it did not punish him for "using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of violence."[7] Id. (quoting Brief for United States at 17, Abbott).

---

[7] Because the Court finds that petitioner is not entitled to the requested Whitley relief as a matter of law pursuant to the Supreme Court holding in Abbott, it need not consider whether

### (2) Claims in the Amended Motion

As noted, petitioner's original motion contained only the resentencing issue under <u>Whitley</u>. However, nineteen months after filing his original motion, and one month after <u>Abbott</u> was decided, petitioner filed an amended motion raising five new claims. Because petitioner was ably represented by counsel at the time he filed the amended motion, the Court will not consider any pro se filings. <u>United States v. Parker</u>, No. 08-CR-6270L, 2010 WL 114575, *1 (W.D.N.Y. Jan. 7, 2010) (declining to review pro se motions while the defendant was represented by counsel); <u>Pri-har v. United States</u>, 83 F. Supp. 2d 393, 399 n.2 (S.D.N.Y. 2000) (same). It should be noted that petitioner never alleges that he or his habeas counsel wished to argue any of the issues petitioner includes in his pro se motion. For these reasons, the interests of justice would not be served by allowing petitioner to amend his motion. <u>See</u> Fed. R. Civ. P. 15(a)(2).

Moreover, all but one of petitioner's pro se claims are time-barred. Section 2255 provides a one-year period of limitation for habeas petitions which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental

---

petitioner's claims on this issue are procedurally barred.

>     action in violation of the Constitution or
>     laws of the United States is removed, if the
>     movant was prevented from making a motion by
>     such governmental action;
>
>     (3) the date on which the right asserted was
>     initially recognized by the Supreme Court, if
>     that right has been newly recognized by the
>     Supreme Court and made retroactively
>     applicable to cases on collateral review; or
>
>     (4) the date on which the facts supporting
>     the claim or claims presented could have been
>     discovered through the exercise of due
>     diligence.

§ 2255(f)(1)-(4).

Ordinarily, the one-year period of limitations runs from "the date on which the judgment of conviction becomes final." Id. § 2255(f)(1). If a petitioner takes an appeal to the Supreme Court, and the Court denies certiorari, his conviction becomes final when the Court denies the petitioner's petition for a writ of certiorari. Green v. United States, 260 F.3d 78, 84 (2d Cir. 2001). By that measure, petitioner's amended motion, filed twenty-six months after the Supreme Court denied certiorari, is untimely. See Major, 129 S. Ct. 298.

It appears from petitioner's submissions that he filed the amended motion under the mistaken belief that his original petition was denied sua sponte on May 4, 2009, because it was docketed incorrectly and that habeas counsel at the time, Richard Rosenkranz, never refiled his § 2255 motion on his behalf. (Mem.

of Law at 10.)  Petitioner claims to have learned about Rosenkranz's alleged error for the first time on November 1, 2010.  (Id.)  Thus, petitioner seems to argue, the one-year period of limitations should run from November 1, 2010, under § 2255(f)(4).

The Court first notes that petitioner's § 2255 petition, as originally filed on his behalf by Rosenkranz, has been active, and that, until now, no decision has been made denying or granting the petition.  Next, petitioner should have included all of his claims in his original motion. Significantly, as noted above, petitioner never claims that any issue other than the Whitley argument should have been submitted in that filing.  The Court also views with skepticism the fact that petitioner raised his new claims for the first time one month after the Whitley argument was rejected by Abbott.

Assuming the Court found petitioner's amended motion properly filed, the ineffective assistance of counsel claim is the one issue that would be considered timely.  An amendment is considered timely if it relates back to the original, timely motion, meaning that it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  A new claim arises out of the "conduct,

15

transaction, or occurrence" set out in a claim in the original motion if the two are united by "a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005).

Here, the only claim that petitioner raised in his original motion was the resentencing claim relying on Whitley. Among petitioner's five new issues, only one relates to the Whitley argument. Petitioner forcefully argues that Rosenkranz was constitutionally ineffective for not arguing at sentencing that the 120-month consecutive sentence should not have been imposed because petitioner was already subject to a higher mandatory minimum. (Mem. of Law at 18-20.) In short, petitioner faults Rosenkranz for failing to make the Whitley argument that was rejected by Abbott.

To prevail on a claim of ineffective assistance of counsel under Strickland v. Washington, a petitioner must demonstrate that counsel's failure to advance an argument constitutes deficient performance and that the deficient performance prejudiced him. 466 U.S. 668, 687 (1984). Because Whitley is no longer good law after Abbott, petitioner was not prejudiced. See Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) ("[T]oday we hold that the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current

governing law, even if the objection might have been considered meritorious at the time of its omission.").

## **Conclusion**

Based on the foregoing, the Court denies petitioner's application for a writ of habeas corpus. Because petitioner has not made a substantial showing of the denial of any constitutional right, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealability). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this judgment denying the petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). Respondent shall serve a copy of this Memorandum and Order on petitioner and file a Certificate of Service by no later than August 3, 2011. The Clerk of the Court is respectfully requested to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED**

Dated: August 2, 2011
       Brooklyn, New York

                                    /s/
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York